IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 09-20005-10-DDC |
| v. | |
| HUGO CHAVEZ-CADENAS (10), | |
| Defendants. | |

**MEMORANDUM AND ORDER**

For the umpteenth time, defendant Hugo Chavez-Cadenas[1] asks for a reduced sentence. He seeks compassionate release under 18 U.S.C. § 3582(c)(1). He also asserts that the Sentencing Commission reduced his sentence, entitling him to a sentence reduction under 18 U.S.C. § 3582(c)(2). And he asks the court to appoint him counsel.

The court rejects these requests. It explains why, below.

**I.     Background**

In January 2010, Mr. Chavez-Cadenas pleaded guilty to conspiracy to distribute and possess with intent to distribute more than 500 grams of methamphetamine. Doc. 580; Doc. 880 at 7–8 (PSR ¶ 6). The Presentence Investigation Report (PSR) attributed 4.53 kilograms of methamphetamine to Mr. Chavez-Cadenas. Doc. 880 at 17–18 (PSR ¶ 81). And, based on all of the methamphetamine seized during the government's investigation into the large drug-trafficking organization, the PSR calculated a 46.05% average purity. *Id.* at 17 (PSR ¶ 80). The

---

[1]     Mr. Chavez-Cadenas filed his motions pro se. People in prison "who proceed pro se . . . are entitled to liberal construction of their filings[.]" *Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

PSR then attributed 2.07 kilograms of methamphetamine (actual) to Mr. Chavez-Cadenas. *Id.* at 17–18 (PSR ¶ 81).

A methamphetamine quantity of over 1.5 kilograms of actual methamphetamine led to a base-offense level of 38 for Mr. Chavez-Cadenas. *Id.* at 19 (PSR ¶ 88). The PSR added two levels because the methamphetamine came from Mexico, *id.* (PSR ¶ 89), and it added three levels for Mr. Chavez-Cadenas's managerial role in the drug conspiracy, *id.* (PSR ¶ 91). Mr. Chavez-Cadenas also received a two-level enhancement for obstruction of justice based on a potentially threatening letter he sent to the mother of a cooperating witness. *Id.* at 18–19 (PSR ¶¶ 83, 84, 92). After a few reductions, the PSR calculated a final offense level of 42. *Id.* at 19 (PSR ¶ 96). Mr. Chavez-Cadenas also received one criminal-history point, establishing a criminal-history category of I. *Id.* at 20 (PSR ¶ 99).

With an offense level of 42 and a criminal-history category of I, Mr. Chavez-Cadenas's 2010 Guideline range was 360 months to life. *Id.* at 24 (PSR ¶ 119). The court sentenced him to 360 months in prison. Doc. 892 at 2 (Judgment). In February 2015, the court reduced Mr. Chavez-Cadenas's sentence to 292 months based on a retroactive Guidelines amendment that lowered his offense level. Doc. 1085.

It's evident that Mr. Chavez-Cadenas remains unhappy with his sentence. Not including the February 2015 sentence reduction and the motions decided in this Order, he's filed 17 motions to reduce his sentence further. Doc. 1099; Doc. 1106; Doc. 1132; Doc. 1136; Doc. 1137; Doc. 1186; Doc. 1189; Doc. 1263; Doc. 1291; Doc. 1317; Doc. 1320; Doc. 1322; Doc. 1326; Doc. 1333; Doc. 1337; Doc. 1358; Doc. 1366.

In this Order, the court takes up two motions for a reduced sentence (Doc. 1381; Doc. 1399) and one motion to appoint counsel (Doc. 1392). The court begins with the governing legal standard.

**II.      Legal Standard**

"'Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed; but the rule of finality is subject to a few narrow exceptions.'" *United States v. Hald*, 8 F.4th 932, 937 (10th Cir. 2021) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)). Compassionate release under 18 U.S.C. § 3582(c)(1) is one of those exceptions. *Id.* When it passed the First Step Act in 2018, Congress amended § 3582(c)(1) to allow a defendant, not just the Bureau of Prisons, to move for a sentence reduction—but only "after the defendant has fully exhausted all administrative rights" with BOP. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Eccleston*, 543 F. Supp. 3d 1092, 1125 (D.N.M. June 10, 2021) (recounting history of First Step Act). Exhaustion aside, the court may grant a defendant's motion for compassionate release only if it finds that (1) "extraordinary and compelling reasons warrant such a reduction"; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the 18 U.S.C. § 3553(a) factors favor a reduced sentence. *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).

Another exception to the rule of finality is 18 U.S.C. § 3582(c)(2), which "authorizes a district court to reduce a sentence 'based on a sentencing range that has subsequently been lowered by the Sentencing Commission.'" *United States v. Chavez-Meza*, 854 F.3d 655, 657 (10th Cir. 2017) (quoting 18 U.S.C. § 3582(c)(2)).

**III.     Analysis**

The court must begin its analysis with a threshold issue: defining the scope of Mr. Chavez-Cadenas's filings that the court will consider. This is necessary because Mr. Chavez-

Cadenas has filed three motions (Doc. 1381; Doc. 1392; Doc. 1399), two replies (Doc. 1384; Doc. 1402), and eight "supplements" (Doc. 1386; Doc. 1387; Doc. 1388; Doc. 1389; Doc. 1395; Doc. 1396; Doc. 1397; Doc. 1398).

Our local rules imagine that a party may file supplements. D. Kan. R. CR1.3(c). But those supplements must set forth "pertinent and significant authorities[.]" *Id.* Mr. Chavez-Cadenas's supplements contain no pertinent and significant authorities. To the contrary, they are confusing and repetitive. Doc. 1386; Doc. 1387; Doc. 1388; Doc. 1389; Doc. 1395; Doc. 1396; Doc. 1397; Doc. 1398. The court thus declines to consider these supplements and will consider only the arguments made in Mr. Chavez-Cadenas's motions and his replies supporting those motions. The court also warns Mr. Chavez-Cadenas. His litigation strategies are ineffective and could obscure any persuasive arguments he might have someday. If he chooses to file a motion in the future, he should not file any supplements unless they meet the criteria of D. Kan. R. CR1.3(c). If they don't, the court won't consider them.

The court begins its analysis with Mr. Chavez-Cadenas's compassionate-release request. It first evaluates whether he has established extraordinary and compelling reasons for his release. He has not. It then evaluates whether the § 3553(a) factors favor compassionate release. They do not. The court next considers whether Mr. Chavez-Cadenas is entitled to relief under Amendment 821 to the United States Sentencing Guidelines. He is not. The court concludes with Mr. Chavez-Cadenas's request that the court appoint him counsel. It declines.

A.   **Extraordinary & Compelling Reasons**

The Sentencing Commission has issued a policy statement describing extraordinary and compelling circumstances that warrant a reduced sentence. The policy statement defines six extraordinary and compelling reasons for release:

- Medical circumstances;

- Advanced age;

- Family circumstances;

- Victim of abuse;

- Other reasons; and

- Unusually long sentence.

U.S.S.G. § 1B1.13(b).

Of these six, Mr. Chavez-Cadenas invokes four. He argues that he's suffering from several worsening medical conditions. He also asserts that a prison transport van wrecked and he sustained injury, qualifying him as a victim of abuse while in BOP custody. And he invokes the "other reasons" catch-all to assert that the COVID-19 pandemic and his youth qualify as extraordinary and compelling reasons for a reduced sentence. Finally, Mr. Chavez-Cadenas asserts that he received an unusually long sentence.

The court tackles each argument, in turn, below.

### 1. Medical Conditions

Mr. Chavez-Cadenas lists the following medical conditions: diabetes, hypertension, high blood pressure, back pain, glaucoma, gout, hypothyroidism, obesity, heart failure, chest pain, endocrine disorder, hyperlipidemia, anxiety, depression, thyroid issues, sleep apnea, arthritis, tendon issues in both hands, kidney failure, and injuries sustained in the prison transport accident. Doc. 1384 at 2, 4; Doc. 1399 at 2, 3. He also suffered an allergic reaction to food served in prison. Doc. 1384-1 at 17. He asserts that these conditions are worsening and he's at risk of death. Doc. 1384 at 3. He further argues that his medical conditions aren't under control in prison, pointing out that he had one medical condition when he entered prison in 2009, and

now he has 14 medical conditions. *Id.* at 4. He's lost mobility in his hands, can't work a full service, and has lost vision to the point that he can't watch television. *Id.* at 8.

The government has consulted Mr. Chavez-Cadenas's medical records from September 2025, which reports a slightly shorter list of ailments: age-related cataracts, diabetes with diabetic neuropathy, hypertension, chest pain, unspecified joint contracture, hypothyroidism, low back pain, and general pain. Doc. 1401 at 10. Mr. Chavez-Cadenas doesn't clarify the discrepancy between his self-reported ailments and the September 2025 health records. *See generally* Doc. 1402. Because these are the only supported ailments in the record, the court considers only these. It disregards the rest of Mr. Chavez-Cadenas's list because he hasn't shown that these illnesses present a current concern.

The government also provides that Mr. Chavez-Cadenas is on a variety of medications: semaglutide (Ozempic), duloxetine, amlodipine, aspirin, atorvastatin, glipizide, hydrochlorothiazide, levothyroxine, metformin, metoprolol tartrate, nitroglycerin, omeprazole, and ondansetron. Doc. 1401 at 12. These medications treat diabetes, mood issues, pain issues, hypertension, inflammation, high cholesterol, fluid retention, hypothyroidism, chest pain, high levels of stomach acid, nausea, and vomiting.

As relevant here, the Sentencing Commission's policy statement provides that medical circumstances qualify as an extraordinary and compelling reason if the defendant is suffering from:

- A terminal illness, such as "a serious and advanced illness with an end-of-life trajectory";

- Substantially diminished ability to provide self-care in the prison environment due to a (i) serious physical or medical condition, (ii) serious functional or cognitive impairment, or (iii) deteriorating physical or mental health because of the aging process, from which the defendant won't recover; or

- A "medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."

U.S.S.G. § 1B1.13(b)(1)(A)–(C). The court concludes that Mr. Chavez-Cadenas hasn't shown that his medical conditions meet these criteria.

Mr. Chavez-Cadenas asserts that his conditions put him at risk of death. But the government has shown that he receives treatment for these conditions—with a variety of medications—so they don't qualify as a terminal illness. Doc. 1401 at 12. To be sure, Mr. Chavez-Cadenas has several *chronic* conditions. But he hasn't shown that any of the conditions listed in his September 2025 health record—cataracts, diabetes, hypertension, chest pain, joint contracture, hypothyroidism, low back pain, and unspecified pain—are *terminal* illnesses. The Sentencing Commission provided the following examples of terminal illnesses: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." U.S.S.G. § 1.1B1.13(b)(1)(A). None of Mr. Chavez-Cadenas's ailments rise to the level of these terminal illnesses.

Nor has Mr. Chavez-Cadenas demonstrated that his ailments diminish his ability to provide self-care in prison. He claims issues with hand mobility, yet the government proffers that Mr. Chavez-Cadenas had carpal-tunnel release surgery in May 2025. Doc. 1401 at 10–11. He also claims he can't work a full service and can't see the television, but this doesn't demonstrate a substantially diminished ability to provide self-care.

Mr. Chavez-Cadenas also asserts that he's not receiving the care he requires. He points out that he has more ailments now than when he entered prison in 2009. The problem with his theory, however, is that the government has suggested that Mr. Chavez-Cadenas receives medication for all that ails him, with the exception of his cataracts. And Mr. Chavez-Cadenas

hasn't shown that, without treatment for his cataracts, he's at serious risk of deterioration in health or death.

The court thus concludes that Mr. Chavez-Cadenas's medical circumstances don't present an extraordinary and compelling reason for his release.

### 2. COVID-19

Liberally construed, Mr. Chavez-Cadenas's motion argues that the prison lockdown caused by COVID-19 violated his constitutional rights and thus constitutes extraordinary and compelling reasons for his release. Doc. 1381 at 4. He calls the COVID-19 lockdown extremely cruel, causing debilitating mental and physical effects. *Id.*

The Sentencing Commission's policy statement "does not list unduly harsh prison conditions as an extraordinary and compelling reason." *United States v. McCoy*, No. 25-6039, 2025 WL 2353013, at *3 (10th Cir. Aug. 14, 2025) (citing U.S.S.G. § 1B1.13(b)). So, Mr. Chavez-Cadenas relies on the policy statement's catch-all provision. It provides that extraordinary and compelling reasons exist if the "defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in [§ 1B1.13(b)(1)–(4)], are similar in gravity to those described in [§ 1B1.13(b)(1)–(4)]." U.S.S.G. § 1B1.13(b)(5).

Our Circuit has held, albeit in an unpublished opinion, that COVID-19 lockdown policies "fail to rise to the level of extraordinary and compelling reasons for a sentence reduction." *McCoy*, 2025 WL 2353013, at *3. Like the *McCoy* defendant, Mr. Chavez-Cadenas hasn't demonstrated that his experience left him with a medical diagnosis or treatment caused by the COVID-19 protocols. *Id.* So, the court can't conclude the COVID-19 lockdown conditions "were so harsh that they are 'similar in gravity'" to the Sentencing Commission's other described

circumstances. *Id.* (quoting U.S.S.G. § 1B1.13(b)(5)). The court thus declines to consider this an extraordinary and compelling reason for a reduced sentence.

### 3. Youth

Mr. Chavez-Cadenas next asserts that his youth should matter to the court, claiming he was only 19 when sentenced. Doc. 1381 at 4. This claim is untrue. Mr. Chavez-Cadenas was born in July 1969, so he was 40 when sentenced in June 2010. Doc. 880 at 3 (PSR). Later, he claims he was young when he committed the crime because he was only 38. Doc. 1402 at 5. The court disagrees that 38 qualifies as a young age. It thus rejects this argument.

### 4. Actual v. Mixture Methamphetamine

Recall that the PSR used "actual methamphetamine" quantities to determine Mr. Chavez-Cadenas's base offense level. Doc. 880 at 19 (PSR ¶ 88). Mr. Chavez-Cadenas devotes the bulk of one of his motions to arguing that the disparity between actual methamphetamine and mixture methamphetamine should qualify him for a sentence reduction. Doc. 1381 at 5. To understand this argument, the court must briefly describe how the Guidelines treat methamphetamine offenses.

The Guidelines use the purity of methamphetamine as a proxy for culpability. So the Guidelines treat actual or highly pure methamphetamine differently than methamphetamine mixture. Specifically, the Guidelines "treat every 1 gram of actual methamphetamine as equivalent to 10 grams of a mixture." *United States v. Espinoza-De Paz*, No. 23-5085, 2024 WL 4448794, at *3 (10th Cir. Oct. 9, 2024) (citing U.S.S.G. § 2D1.1(c)). Some judges have concluded that this ten-to-one ratio lacks an empirical basis and have disagreed with the Guidelines' policy choice on this matter. *See, e.g.*, *United States v. Pereda*, No. 18-00228-CMA, 2019 WL 463027, at *3–4 (D. Colo. Feb. 6, 2019) (collecting cases).

Our Circuit recently held that a district judge has discretion to decide whether the Guidelines' treatment of actual methamphetamine qualifies as an extraordinary and compelling reason for compassionate release. *United States v. Fraser*, No. 25-6023, 2025 WL 3042362, at *2 (10th Cir. Oct. 31, 2025). And at least one judge from our court has held that the disparity between methamphetamine mixture and actual methamphetamine can qualify—in certain circumstances—as an extraordinary and compelling reason for compassionate release. *United States v. Sands*, No. 06-20044-03-JAR, 2025 WL 252929, at *5–6 (D. Kan. Jan. 21, 2025).

The court, exercising its discretion, declines to consider the use of actual methamphetamine quantities in Mr. Chavez-Cadenas's sentence an extraordinary and compelling reason for compassionate release. In *Sands*, the court disagreed with the actual-methamphetamine numbers because the defendant had low-purity methamphetamine, indicating that the defendant was low in the drug-trafficking hierarchy. *Id.* at *5. That's not the case here. Mr. Chaves Cadenas received an enhancement to reflect his managerial role in the conspiracy. Doc. 880 at 19 (PSR ¶ 91). So the sentencing record provides an independent basis to evaluate Mr. Chavez-Cadenas's culpability.

The court thus rejects Mr. Chavez-Cadenas's argument on this front.

### 5. Unusually Long Sentence

Mr. Chavez-Cadenas next argues that he received an unusually long sentence and a change of law—particularly, the methamphetamine actual v. mixture disparity—qualifies as an extraordinary and compelling reason for compassionate release. Doc. 1381 at 4. The Guidelines provide that an "unusually long sentence" may present extraordinary and compelling reasons for compassionate release under certain circumstances. U.S.S.G. § 1B1.13(b)(6). The Guidelines allow the court to consider changes in the law (other than non-retroactive Guidelines amendments) if a defendant (1) received an unusually long sentence and (2) has served at least

ten years of that sentence.  *Id.*  The court may consider such a change in the law only if the change "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed[.]"  *Id.*

Here, Mr. Chavez-Cadenas doesn't identify any change in law that would apply to him. He claims that the Sentencing Commission "made changes to the Guidelines for the difference between 'actual' and 'mixture' . . . methamphetamine."  Doc. 1381 at 5 (quotation cleaned up). Not so.  The Sentencing Commission issued a report on this issue.  United States Sentencing Commission, *Methamphetamine Trafficking Offenses in the Federal Criminal Justice System* (June 2024), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2024/202406_Methamphetamine.pdf.  But the Sentencing Commission hasn't amended the Guidelines to eliminate the difference between actual and mixture methamphetamine.  So, there's no disparity for the court to consider, and the court thus rejects Mr. Cavez Cadenas's invocation of the "unusually long sentence" theory.

### 6. Transport Van Accident[2]

Mr. Chavez-Cadenas has informed the court that he sustained injuries in a car accident. Doc. 1392 at 1; Doc. 1399 at 3.  He explains that a prison transport van was travelling too fast and got into an accident, causing Mr. Chavez-Cadenas to hit his head.  Doc. 1392 at 1.  He accuses the correctional officer who drove the van of maliciously and intentionally causing the accident to harm him and, alternatively, driving negligence.  *Id.*  In Mr. Chavez-Cadenas's view, this accident qualifies as an extraordinary and compelling reason for release because he was a victim of a prison official's misconduct.  *Id.*

---

[2] The government halfheartedly invokes failure to exhaust on this claim.  Doc. 1394 at 3.  Given the meager information provided by the government's argument, the court declines to evaluate this cursory invocation and addresses this claim on its merits.

Mr. Chaves Cadenas cites U.S.S.G. § 1B1.13(b)(4)(B).  Doc. 1392 at 1.  In that policy statement, the Sentencing Commission provides an extraordinary and compelling reasons category for defendants who were victims of physical abuse while in BOP custody.  U.S.S.G. § 1B1.13(b)(4).  The policy statement requires, however, that "the misconduct . . . be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger."  *Id.*

Mr. Chavez-Cadenas has not shown that the accident led to a criminal case, a civil case, or an administrative proceeding—much less any finding of misconduct.  He asks the court to request evidence of the incident.  Doc. 1392 at 1.  The court declines to do so because generally, "a prisoner who challenges the conditions of his confinement must do so through a civil rights action."  *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012).  Indeed, Mr. Chavez-Cadenas's filing resembles a civil lawsuit, though it's titled as a motion to appoint counsel and a motion for compassionate release.  *Compare* Doc. 1392 at 1, *with id.* at 2–13.  A post-conviction proceeding makes a poor substitute for the fact-finding and discovery processes of a civil lawsuit.

To the extent that Mr. Chavez-Cadenas argues that his injuries from this accident qualify as medical conditions warranting extraordinary and compelling release, the court rejects this notion.  Medical records suggest that Mr. Chavez-Cadenas sustained a small bump and reported headaches and a sore neck.  Doc. 1401 at 11.  These issues, to say the obvious, are not terminal ones.  U.S.S.G. § 1B1.13(b)(1)(A).  Nor does Mr. Chavez-Cadenas demonstrate that these issues substantially diminish his ability to provide self-care.  *Id.* § 1B1.13(b)(1)(B).  And these medical

conditions don't require long-term or specialized medical care that BOP isn't providing. *Id.* § 1B1.13(b)(1)(C).

The court thus rejects Mr. Chavez-Cadenas's argument that the transport vehicle accident entitles him to a reduced sentence.

### B.      § 3553(a) Factors

Even if Mr. Chavez-Cadenas presented extraordinary and compelling reasons for his release, the court would deny him a reduce sentence for an independent, alternative reason: the § 3553(a) sentencing factors do not favor release.[3]

Mr. Chavez-Cadenas relies on his rehabilitative efforts to demonstrate that he's earned a reduced sentence. Doc. 1381 at 10. And he's served a significant portion of his sentence. *Id.* at 11. The court commends Mr. Chavez-Cadenas's admirable efforts at rehabilitation and hopes he will continue them. The court previously has concluded, however, that the § 3553(a) factors don't favor a reduced sentence for Mr. Chavez-Cadenas. *See, e.g.*, Doc. 1332 at 8–9; Doc. 1348 at 8–9. The court hasn't changed its mind.

The nature and circumstances of Mr. Chavez-Cadenas's offense do not favor a reduced sentence. 18 U.S.C. § 3553(a)(1). Mr. Chavez-Cadenas occupied a leadership role in a large drug trafficking organization that imported methamphetamine from Mexico to distribute—in large quantities—in the Kansas City area. Doc. 880 at 11, 19 (PSR ¶¶ 37, 91). After his arrest,

---

[3]      Those factors are: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant;" "(2) the need for a sentence imposed . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed . . . correctional treatment;" "(3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;" "(5) any pertinent policy statement . . . issued by the Sentencing Commission;" "(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution." 18 U.S.C. § 3553(a).

Mr. Chavez-Cadenas sent a threatening letter to a cooperating witness's mother. *Id.* at 18 (PSR ¶¶ 83–85). This is a serious felony offense, with a splash of obstruction of justice, and it does not favor compassionate release.

The court also concludes that Mr. Chavez-Cadenas's current sentence accurately reflects the seriousness of his offense. 18 U.S.C. § 3553(a)(2)(A). And a reduced sentence would not promote adequate respect for the law, nor would it provide just punishment for Mr. Chavez-Cadenas's offense. *Id.* Mr. Chavez-Cadenas already has benefitted from a Guidelines amendment, and he received a sentence at the low end of the new Guidelines range.

The court notes that some of the § 3553(a) factors favor Mr. Chavez-Cadenas, like his thin criminal history and his chronic health conditions. *See* 18 U.S.C. § 3553(a)(1), 3553(a)(2)(D). But these factors simply don't outweigh the others.

In sum, even if Mr. Chavez-Cadenas could demonstrate extraordinary and compelling circumstances for a reduced sentence, the court still would decline because the § 3553(a) factors do not favor a reduced sentence.

### C.     Amendment 821

Liberally construed, one of Mr. Chavez-Cadenas's motions argues that he's eligible for a sentence reduction under Amendment 821. Doc. 1381 at 1, 2. Section 3582(c)(2) allows the court to modify a sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission[.]" "Section 3582(c)(2) plainly tells us a defendant must overcome three distinct hurdles before he may obtain a sentence reduction thereunder." *United States v. C.D.*, 848 F.3d 1286, 1289 (10th Cir. 2017) (emphases omitted). The court need only consider the first hurdle here: "under the statute's 'based on' clause, the defendant must show he was sentenced based on a guideline range the Sentencing Commission lowered subsequent to defendant's sentencing. If

not, the district court lacks jurisdiction over the defendant's motion and the motion must be dismissed." *Id.* Mr. Chavez-Cadenas fails to clear this first hurdle because Amendment 821 doesn't lower his Guideline range.

Amendment 821 contains two parts. It's not clear which one Mr. Chavez-Cadenas invokes, so the court addresses both. *First*, Amendment 821 lowered the criminal-history points a defendant receives if he committed the offense "while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." United States Sentencing Commission, *Amendment 821,* https://www.ussc.gov/guidelines/amendment/821 (last visited Dec. 2, 2025). *Second*, Amendment 821 enacted U.S.S.G. § 4C1.1, which reduces a defendant's offense level by two levels if a defendant has zero criminal-history points and meets other criteria.

Mr. Chavez-Cadenas didn't receive any points for committing his crimes while under a criminal-justice sentence. And he received a criminal-history point, so he's not a zero-point offender. So, Amendment 821 doesn't lower Mr. Chavez-Cadenas's Guideline range. The court thus lacks jurisdiction to reduce his sentence further based on Amendment 821. *C.D.*, 848 F.3d at 1289 (explaining that, to secure sentence reduction under § 3582(c)(2), "the defendant must show he was sentenced based on a guideline range the Sentencing Commission lowered subsequent to defendant's sentencing" and if the defendant fails to make this showing, "the district court lacks jurisdiction over the defendant's motion and the motion must be dismissed").

### D.      Motion to Appoint Counsel

Finally, Mr. Chavez-Cadenas asks the court to appoint him counsel. Doc. 1392 at 1. "There is no constitutional right to counsel beyond the direct appeal of a criminal conviction[.]" *Coronado v. Ward*, 517 F.3d 1212, 1218 (10th Cir. 2008). That includes compassionate-release motions. *United States v. Hemmelgarn*, 15 F.4th 1027, 1032 (10th Cir. 2021). Our

court appointed the Office of the Federal Public Defender to help eligible defendants seek relief under Amendment 821.  *See* D. Kan. S.O. 23-03.  The Federal Public Defender has declined to enter an appearance on Mr. Chavez-Cadenas's behalf.  Doc. 1385.  And besides, his flood-the-zone strategy notwithstanding, Mr. Chavez-Cadenas has capably presented his arguments himself.  The court thus denies Mr. Chavez-Cadenas's motion for counsel.

## IV.      Conclusion

The court denies Mr. Chavez-Cadenas's request for compassionate release under 18 U.S.C. § 3582(c)(1).  And it dismisses Mr. Chavez-Cadenas's request for a reduced sentence based on an amended Guideline range under 18 U.S.C. § 3582(c)(2).  It also denies Mr. Chavez-Cadenas's request for appointed counsel.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Motion to Reduce Sentence (Doc. 1381) is denied in part and dismissed in part.

**IT IS FURTHER ORDERED THAT** the Motion for Appointment of Counsel and for Compassionate Release (Doc. 1392) is denied.

**IT IS FURTHER ORDERED THAT** the Motion for Compassionate Release (Doc. 1399) is denied.

**IT IS SO ORDERED.**

**Dated this 10th day of December, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
